Affirmed In Part,
Reversed In Part, and Remanded and Memorandum Opinion filed June 14, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00383-CR



RONALD EUGENE
TILLER, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 183rd District Court

Harris County, Texas

Trial Court
Cause No. 1197877



 

MEMORANDUM OPINION

Appellant Ronald Eugene Tiller appeals his conviction
for felony robbery.  After the jury found him guilty, the trial court found two
enhancement allegations true and assessed punishment at 30 years’ incarceration
in the Institutional Division of the Texas Department of Criminal Justice.  Appellant
contends that the evidence is legally insufficient to support his conviction and
that appellant’s punishment was improperly enhanced.  We affirm appellant’s
conviction, reverse the trial court’s judgment sentencing appellant to 30 years’
imprisonment, and remand the case for a new punishment hearing.

Background

            On November 7,
2007, as Shaileshkumar Shah was working the dayshift at a Texaco gas station
that he co-owned, a masked man, who was carrying what appeared to be a gun,
entered the store, went behind the counter, and attempted to break into the
cash register.  The man then put down the gun (which was actually a fake gun
that looked like a Glock 19), lifted the register off the counter, and slammed
it to the ground where it broke open.  In the process, a gauze bandage fell off
his hand.  As the man was scrambling to grab cash from the register, Shah
confronted him.  The man shoved Shah to the ground, and Shah received scratches
on his face.  The gun also fell on the floor during the scuffle and broke into
pieces.  After he took the money, the man jumped over the counter and fled,
leaving behind the gun and bandage.  The entire incident was recorded by the
store’s security surveillance cameras.  

            The police
arrived within a few minutes of the incident.  Although he could not later positively
identify the masked individual in a photo array, Shah described his assailant
as a dark-skinned black male between 30- and 35-years-old who was “skinny” and
approximately five-feet, five-inches tall.  Shah confirmed that this man, who
was not wearing any gloves, touched several items in the store, such as the
cash register and counter, and leaned against Shah’s car as he fled.  The State
was unable to recover any fingerprint evidence, but did recover a partial palm
print that did not match appellant’s.  

The State, however, obtained DNA evidence consistent
with appellant’s DNA from the bandage and the gun.  According to the State’s
Crime Scene Unit investigator, the likelihood that some person other than
appellant would have the DNA profile identified on the gun “was 1 in 3,046
Caucasians, 1 in 7,120 African-Americans, [or] 1 in 3,230 Hispanics.”  The
likelihood that some person other than appellant would have the DNA profile
identified on the gauze was much more noteworthy, as attested to by the investigator: 
“1 in 2.195 quintillion for Caucasians; 1 in 13.64 quadrillion for
African-Americans; 1 in 1.383 quintillion for Hispanics.”  

Sufficiency of the Evidence

In his first issue, appellant challenges the legal
sufficiency of the evidence to support his robbery conviction on two grounds:
he alleges, first, that the State did not establish that he is the person who
committed the crime and, second, that there was a fatal variance between the
State’s pleadings and its proof.

We review the sufficiency of the evidence in this
case under a rigorous and proper application of the legal sufficiency standard
of Jackson v. Virginia, 443 U.S. 307 (1979).  Brooks v. State,
323 S.W.3d 893, 906 (Tex. Crim. App. 2010) (plurality op.); Pomier v. State,
326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  When
reviewing the sufficiency of the evidence, we view all of the evidence in the
light most favorable to the verdict to determine whether the fact-finder was
rationally justified in finding guilt beyond a reasonable doubt.  Brooks,
323 S.W.3d at 899.  This court does not sit as a thirteenth juror and may not
substitute its judgment for that of the fact-finder by re-evaluating the weight
and credibility of the evidence.  Id. at 901–02, 905; see also Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We defer to the
fact-finder’s resolution of conflicting evidence unless the resolution is not
rational.  Brooks, 323 S.W.3d at 902 n.19, 907; Pomier, 326
S.W.3d at 378.

A person commits robbery if, in the course of
committing theft and with intent to obtain or maintain control of the property,
that person intentionally, knowingly, or recklessly causes bodily injury to
another, or intentionally or knowingly threatens or places another in fear of
imminent bodily injury or death.  Tex. Penal Code Ann. § 29.02(a) (Vernon
2003).  “In the course of committing theft” is defined as “conduct that occurs
in an attempt to commit, during the commission, or in immediate flight after
the attempt or commission of theft.”  Id. § 29.01(1).  A person commits
theft if the person unlawfully appropriates property with intent to deprive the
owner of property.  Tex. Penal Code Ann. § 31.03 (Vernon Supp. 2009). 
Appropriation of property is unlawful if it is without the owner’s effective
consent.  Id.  Bodily injury is defined as “physical pain, illness, or
any impairment of physical condition.”  Id. § 1.07(a)(8).  

1.      Identity

Appellant first complains that the State did not
establish his identity as the perpetrator of the crime because (1) Shah did not
identify appellant as the robber, (2) no fingerprint evidence was obtained
by the State and the partial palm print did not belong to appellant, and (3)
the State did not show the circumstances by which appellant’s DNA was deposited
onto the gun and the gauze bandage.

The identity of the perpetrator of an offense can be
proven by direct or circumstantial evidence.  Earls v. State, 707 S.W. 2d
82, 85 (Tex. Crim. App. 1986).  Direct evidence of the elements of the offense
is not required.  Hooper v. State, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).
 Juries are permitted to make reasonable inferences from the evidence presented
at trial, and circumstantial evidence is as probative as direct evidence in
establishing the guilt of an actor.  Id. at 14–15.  Circumstantial
evidence alone may be sufficient to establish guilt.  Id. at 15.

Reviewing the evidence presented in this case with
the appropriate level of deference to the jury’s credibility determinations, we
note the following evidence supports the conclusion that appellant was the
robber: (1) the surveillance video shows the robber handling the gun and later,
a large, white bandage falling from his hand, (2) both the gun and bandage
were recovered and tested positive as consistent with appellant’s DNA, and (3)
Shah’s description of the robber substantially matches the physical
characteristics of appellant.  

Shah could not identify appellant as the robber on a
photo array, but eyewitness testimony is not necessary to determine identity.  See
Earls, 707 S.W. 2d at 85; Conyers v. State, 864 S.W.2d 739, 740–41
(Tex. App.—Houston [14th Dist.] 1993, writ ref’d) (rejecting legal sufficiency
challenge when there was no eyewitness identification, but surveillance
screenshots were available “and the jury could compare the photos with the
physical appearance” of the defendant); see also Roberson v. State, 16
S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref’d) (“[I]dentity may be proven
by inferences.”).  The State presented evidence explaining why Shah was unable
to identify his assailant—the robber wore a mask—and presented other evidence
that appellant was the perpetrator of the crime—the video, DNA evidence linking
appellant to the crime, and Shah’s physical description of appellant.  The fact
that Shah never identified appellant as the gunman, standing alone, does not
make the verdict improper.  See Conyers, 864 S.W.2d at 741.

Appellant argues that his DNA could have come in
contact with the gauze and the gun sometime before the robbery occurred and
cites Eby v. State, 165 S.W.3d 723 (Tex. App.—San Antonio 2005, pet.
ref’d) in support of his argument that his DNA does not place him at the scene
of the crime.  In that case, the court of appeals held that there was factually
insufficient evidence to support a conviction for murder (although the evidence
was legally sufficient), based on a number of factors, including that DNA on
the victim’s fingers could have been deposited there from a pair of gloves purportedly
loaned to the victim by the appellant’s wife before the murder.  Id. at
733–34.  No other evidence directly linked the appellant in that case to the
victim.  Here, by contrast, the video footage shows that, during the commission
of the crime, the robber handled and dropped the gun, and the gauze fell off
his hand.  DNA consistent with the appellant’s was the only DNA found on the
gauze.  Similarly, DNA found on the gun was consistent with appellant’s and
Shah’s, although there was a third, unidentified contributor of DNA to the gun. 


Appellant also takes issue with the sufficiency of
the DNA evidence because the State’s DNA analyst described appellant as a
“possible contributor” to the DNA found on the gun and the bandage.  The
analyst explained that in the field, the term “possible contributor” takes into
account the outside possibility that someone might have an identical or genetic
twin.  He elaborated: the likelihood that someone other than appellant would
have the DNA profile identified on the gun “was 1 in 3,046 Caucasians, 1 in
7,120 African-Americans, [or] 1 in 3,230 Hispanics,” and the likelihood that
someone other than appellant would have the DNA profile identified on the gauze
was “1 in 2.195 quintillion for Caucasians; 1 in 13.64 quadrillion for
African-Americans; 1 in 1.383 quintillion for Hispanics.”  He explained, in
terms of probability, that the Earth’s population is “about 6.3 billion.”  The
jury was entitled to weigh this evidence in making its determination that
appellant was the perpetrator of the crime, and we may not substitute our
judgment for that of the jurors.  See Brooks, 323 S.W.3d at
901–02.

Shah described his assailant as “not big[, j]ust
maybe five and five,” and “skinny.”  The record shows that appellant is
five-feet, six-inches tall and, when this case was tried, was “stocky” or “big”
and weighed approximately 250 pounds.  But the record shows that appellant put
on some weight after he was incarcerated.  The deputy who first responded to
the robbery, moreover, testified that Shah described the robber as weighing
between 200 and 240 pounds.  Any discrepancies in the description of appellant’s
appearance apply to the weight and credibility of the witnesses and were before
the jury for their consideration.  Earls, 707 S.W. 2d at 85.  

Appellant’s argument regarding the lack of
fingerprint evidence also amounts to an attack on the weight and credibility of
the evidence.  See Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim.
App. 1999) (“The jury, as the trier of fact, is the sole judge of the
credibility of the witnesses and of the strength of the evidence.”).  The Crime
Scene Unit investigator testified that many variables impact the recovery and
quality of fingerprint evidence, such as weather conditions, whether the person
was sweating, or whether the surface is smooth or sticky.  He stated that
appellant’s fingerprints likely were not recovered from Shah’s car because the
car was dusty, and fingerprints “just slide off” dusty surfaces.  The
investigator further testified that the videotape showed appellant’s hand
sliding as he touched the counter and jumped over it and that sliding creates a
smudge.  The investigator also testified that he only was able to recover a
partial palm print from the counter.  The jury was entitled to weigh this
evidence and the fact that the partial palm print was not identified as
appellant’s, and we decline to substitute our judgment for the jury’s on this
issue as well.

The jury was the sole judge of the credibility of and
weight to be given to the DNA evidence presented by the State, the lack of
fingerprint evidence, the partial palm print that did not match appellant’s,
the video surveillance, and the physical descriptions of appellant.  We defer
to the jury’s weight and credibility determinations and find the evidence
sufficient to support the jury’s verdict.

2.      Variance

Appellant next complains that the State did not
present legally sufficient evidence to show that appellant “[struck] the
complainant with his hand,” as alleged in the indictment.  Specifically, he
alleges that the State did not present evidence to identify Shah as the
complainant or to establish that appellant caused bodily injury to Shah by
“striking the complainant with his hand.”

“A ‘variance’ occurs when there is a discrepancy
between the allegations in the charging instrument and the proof at trial.”  Gollihar
v. State, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001).  When this happens, “the
State has proven the defendant guilty of a crime, but has proven its commission
in a manner that varies from the allegations in the charging instrument.”  Id. 
“A variance that is not prejudicial to a defendant’s ‘substantial rights’ is
immaterial.”  Id. at 248.  Only a “material” variance (also called a
“fatal variance”) between the indictment and the proof, i.e., one that
prejudices the defendant’s substantial rights, will render the evidence
insufficient.  Id. at 249, 257.  We ask two questions to determine
whether a variance is prejudicial to a defendant’s substantial rights:  “whether
the indictment, as written, informed the defendant of the charge against him
sufficiently to allow him to prepare an adequate defense at trial, and whether
prosecution under the deficiently drafted indictment would subject the
defendant to the risk of being prosecuted later for the same crime.”  Id.
at 248, 257.

Appellant was charged by indictment, in pertinent
part, as follows:

[I]n Harris County,
Texas, Ronald Eugene Tiller, hereafter styled the Defendant, heretofore on or
about November 7, 2007, did then and there unlawfully, while in the course of
committing theft of property owned by Shaileshkumar Shah and with intent to obtain
and maintain control of the property, intentionally, knowingly and recklessly
cause bodily injury to Shaileshkumar Shah, by striking the complainant with his
hand.

Appellant asserts that the State did not present any
evidence that identified Shah as “the complainant.”  But the record contains
several references to Shah as the complainant:  (1) the investigating officer
stated that he met with “the Complainant, Mr. Shah,” to show him the photo
array; (2) another officer testified that he collected physical evidence (a
buccal swab)[1]
“from the Complainant, Shah” and, earlier in his testimony, had explained that
“[t]he Complainant is the victim at the scene”; (3) the responding officer
identified Shah as the injured party after the robbery; and (4) the DNA analyst
referred to the victim as “the Complainant, Mr. Shah” when he identified samples
of DNA.  We hold that the State presented evidence that Shah was the
complainant; thus, there is no variance between the indictment and the proof
offered at trial on that issue.[2] 


Appellant next asserts that the State did not present
legally sufficient evidence that appellant caused bodily injury to Shah “by
striking . . . with his hand.”  We note that the video surveillance shows a
struggle between Shah and the robber, and Shah testified that his assailant
“[h]it me,” “pushed me,” and “throw [sic] [me] on the floor” and that Shah had
scratches on his face that resulted in scarring.  There was thus evidence from
which the jury could infer that appellant caused bodily injury to Shah by
striking him with appellant’s hand.[3] 
Even if that were not the case, any variance between the proof presented by the
State on this issue and the indictment would be immaterial, as the record shows
that Shah clearly sustained bodily injuries from his attacker and the manner in
which he sustained the injury is not a substantive element of the offense.  See
Fuller v. State, 73 S.W.3d 250, 254 (Tex. Crim. App. 2007) (recognizing
that variance is immaterial and evidence is legally sufficient when substantive
elements of offense have been proven).  Appellant, moreover, did not present
evidence that he did not know whom he was accused of injuring or that he was
surprised by the proof at trial.  See id.  We decline to find a variance
between the proof presented by the State and the indictment on this issue.

For the preceding reasons, we overrule appellant’s first
issue.

Improper Punishment

In his second issue, appellant complains that the
State did not establish the finality of his conviction alleged in the second
enhancement paragraph of the indictment.  The State agrees, but asserts that
appellant is entitled only to reversal of his sentence and remand for a second
punishment hearing.  We agree.

Appellant had two prior convictions, for felony possession
of a controlled substance and felony robbery.  The indictment included two
enhancement paragraphs that, if proven, would subject appellant to punishment
as a “habitual offender” under Texas Penal Code Section 12.42(d).  Appellant
entered pleas of “true” to the first enhancement and “not true” to the second
enhancement.  The trial court found both enhancement allegations true and
assessed punishment at 30 years’ incarceration.

For punishment to be assessed properly under section
12.42(d), the State was required to prove the following chronological sequence
of events:  (1) the first conviction became final; (2) the offense leading to a
later conviction was committed; (3) the later conviction became final; and (4)
the offense for which the accused presently stands was committed.  Jordan v.
State, 256 S.W.3d 286, 290–91 (Tex. Crim. App. 2008); see also Tex.
Penal Code Ann. § 12.42(d) (Vernon Supp. 2009).  “[W]hen there is no evidence
to show that the offenses were committed and became final in the proper
sequence, the defendant’s sentence may not be enhanced under the State’s
habitual offender statutes.”  Jordan, 256 S.W.3d at 291.  

Here, the record shows that the second conviction was
appealed, but, as the State admits, no evidence was presented to show the
result of that appeal or the finality of the second conviction.  As a result,
appellant’s sentence could not be enhanced.  We, accordingly, reverse
appellant’s sentence and remand for a new punishment hearing during which the
State may present evidence of the existence and finality of appellant’s second
conviction.  See Tex. Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp.
2009) (stating if a new trial is awarded to a defendant “only on the basis of
an error or errors made in the punishment stage of the trial, the cause shall
stand as it would have stood in case the new trial had been granted by the
court below, except that the court shall commence the new trial as if a finding
of guilt had been returned and proceed to the punishment stage of the trial
under Subsection (b), Section 2, Article 37.07, of this code”); Jordan,
256 S.W.3d at 292 (“When a reviewing court determines that the State’s evidence
fails to show that an enhancement allegation is true, the Double Jeopardy
Clause does not bar the use of the enhancement conviction during a retrial on
punishment.”).

We, therefore, sustain appellant’s second issue.

Conclusion

We affirm appellant’s conviction, but reverse the
portion of the trial court’s judgment sentencing appellant to 30 years’
imprisonment and remand for a new punishment hearing.

 








                                                                                    

                                                                        /s/        Martha
Hill Jamison

                                                                                    Justice

 

 

Panel consists of Justices Frost, Jamison,
and McCally.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
A buccal swab is used to collect DNA.  In this case, the buccal swab of Shah was
used to eliminate his DNA from the other DNA evidence collected.





[2]
We also note that the indictment clearly identified Shah as the complainant: 
“Ronald Eugene Tiller . . . while in the course of committing theft . . .
cause[d] bodily injury to Shaileshkumar Shah, by striking the complainant with
his hand.”  And even if there were a variance, it would be immaterial.  See
Fuller v. State, 73 S.W.3d 250, 254 (Tex. Crim. App. 2007) (concluding that
prosecution’s failure to prove victim’s name exactly as alleged in indictment
did not result in insufficient evidence because victim’s name was not statutory
element of offense and appellant did not present evidence that he did not know
whom he was accused of injuring or that he was surprised by proof at trial).





[3]
Even if Shah were only “pushed” to the floor, the jury could conclude that the
pushing was done with appellant’s hand and the resulting fall caused the
scratching.